**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CATHERINE SPARKS ) | CIVIL ACTION |
| Plaintiff, ) | |
| ) | Case No. _____ |
| vs. ) | |
| ) | JUDGE |
| SERENITY HOMES LV, LLC., ) | |
| and ) | MAGISTRATE JUDGE |
| VALERIE KALEAL, ) | |
| Defendants. ) | |

**COMPLAINT**

Now comes Plaintiff Catherine Sparks ("Plaintiff"), by and through counsel, for her Complaint against Defendant Serenity Homes LV, LLC ("Defendant Serenity Homes") and Defendant Valerie Kaleal ("Defendant Kaleal") (collectively, "Defendants") about Defendants' failure to pay Plaintiff minimum wage and overtime compensation, and hereby states as follows:

**I. PRELIMINARY STATEMENT**

Plaintiff brings this action against Defendants seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* the Ohio Minimum Fair Wage Standards Act, R.C. § 4111 *et seq.* ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and the Ohio Constitution, Oh. Const. Art. II § 34a. Plaintiff's allegations as to her own acts are based on personal knowledge and other allegations are made on information and belief.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 29 U.S.C. §§ 201, *et. seq.* of the FLSA and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's Ohio Wage Acts claims and Plaintiff's claims under the Ohio Constitution, because those claims derive from a common nucleus of operative fact.

3. This Court has personal jurisdiction over Defendant Serenity Homes because Defendant Serenity Homes is a corporation that is registered to conduct business in this District, its principal place of business, in Richland County, is in this District, it conducts substantial business in this District, and it has sufficient minimum contacts within this District.

4. This Court has personal jurisdiction over Defendant Kaleal because Defendant Kaleal conducts substantial business in this District and has sufficient minimum contacts within this District.

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because at all times relevant hereto, Defendants are and always have been responsible for the acts alleged herein, Defendants maintain their principal place of business in this District, a substantial portion of the practices complained of herein occurred in this District, Defendants have conducted substantial business in this District, and Defendants have received substantial revenue as a result of doing business in this District. Defendants jointly suffered and permitted Plaintiff to perform work within this District, and a substantial part of the events or omissions giving rise to the claim occurred within this District.

## III. PARTIES

6. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if

fully set forth herein.

7. Plaintiff Sparks is an individual residing in Mansfield, Ohio (Richland County). Plaintiff has been jointly employed by Defendants as a Home Health Aide ("HHA") from approximately July 2015 to the present.

8. Defendant Serenity Homes is a domestic limited liability company organized and existing under the laws of the State of Ohio and may be served through its statutory agent, Valerie Kaleal, at 2327 Holtz Road, Shelby, Ohio, 44857 (Richland County).

9. Defendant Serenity Homes is an agency that employs home health aides and sends them to work at the private homes of its clients.

10. Defendant Kaleal is the registered agent of Serenity Homes as well as the Manager of Serenity Homes. Defendant Kaleal may also be served at 2327 Holtz Road, Shelby, Ohio, 44857 (Richland County).

## IV. FACTS

11. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

12. During relevant times, Defendant Serenity Homes and Defendant Kaleal have been, jointly and individually, employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13. During relevant times, Defendant Serenity Homes was and is an enterprise regularly engaged in interstate commerce within the meaning of Sections 3(r) and 3(s)(1) of the FLSA, 29 U.S.C. §§ 203(r) and 203(s)(1).

14. During relevant times, Defendants have operated and controlled an enterprise that employs individuals engaged in the services of providing home healthcare to individuals with

mental and physical disabilities and specific medical needs.

15. According to Defendant Serenity Homes' Facebook Group page, Defendant Serenity Homes has a "mission to collaborate with developmentally disabled persons and their families to promote quality of life; independence and community involvement."

16. Upon information and belief, Defendants have employed at least two (2) individuals and have had annual gross volume of sales made or business done of at least $500,000.00 during all times material to this Complaint.

17. During relevant times, Defendants have employed individuals engaged in interstate commerce and individuals that regularly and recurrently handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

18. During relevant times, Defendants had employees, including Plaintiff, regularly and recurrently using tools or other articles necessary for doing or making things for Defendants' commercial purposes.

19. During relevant times, Defendants mutually benefitted from the work performed by Plaintiff.

20. During relevant times, Defendants have acted directly or indirectly in the interest of each other in relation to Plaintiff.

21. During relevant times, Defendant Kaleal has had operational control over significant aspects of the Defendant Serenity Homes' day-to-day functions. Defendant Kaleal is the registrant and primary contact for Defendants' business. Defendant Kaleal regularly conducted company meetings and was the point of contact for all HHAs employed by Defendants.

22. During relevant times, Defendants have had operational control over significant

4

aspects of Plaintiff's day-to-day functions, the authority to hire, fire, and discipline employees, including Plaintiff, the authority to set rates and methods of compensation, and the authority to control the work schedules and employment conditions of Plaintiff.

23. During relevant times, Defendants primarily engaged in ordinary commercial activities and primarily engaged in competition in the public with other commercial enterprises.

24. During relevant times, Defendants typically managed a case load of approximately seven (7) to nine (9) clients at a time, sometimes more.

25. During relevant times, Plaintiff did not perform primary duties that required advanced knowledge, such as work that was predominantly intellectual in character or that included work requiring consistent exercise of discretion and judgment; nor did Defendants require Plaintiff to have advanced knowledge in a field of science or learning, or advanced knowledge that was customarily acquired by a prolonged course of specialized intellectual instructions.

26. During relevant times, Defendants did not require Plaintiff to perform primary duties that were the performance of office or non-manual work directly related to the management or general business operations of Defendants.

27. During relevant times, Defendant Kaleal worked out of the same principal place of business in Richland County as Plaintiff. Defendant Kaleal was one of the individuals that interviewed and hired Plaintiff. Defendant Kaleal's interaction with Defendants' employees, including Plaintiff, is regular and recurring, to the extent that Defendant Kaleal asked Plaintiff how she was feeling, advised Plaintiff on handling clients, approved Plaintiff's schedule and discussed any scheduling requests, made statements as to personal observations of Plaintiff, and asked other personal questions of Plaintiff.

28.     Around approximately July of 2015, Defendants hired Plaintiff as a Home Health Aide to provide home health services to Defendants' clients, either at the clients' private homes or at a home owned by Defendants, throughout the Mansfield, Ohio and Shelby, Ohio area.

29.     Upon hiring Plaintiff around approximately July of 2015, Defendant Kaleal informed Plaintiff that Defendants would compensate her at an hourly rate of $10.00 per hour.

30.     During relevant times, Defendants have assigned Plaintiff to care for at least one (1) to three (3) of Defendants' clients.

31.     As a HHA for Defendants, Plaintiff has regularly worked at least forty (40) hours per week, typically at least sixty (60) to eighty (80) hours per week, up to approximately one hundred and ten (110) hours per week.

32.     Plaintiff's regular working hours, although varied from day-to-day, typically ranged for approximately ten (10) to fourteen (14) hours per continuous workday approximately five (5) to seven (7) days per week.

33.     During relevant times, Plaintiff regularly worked Sunday through Saturday, and fluctuated hours, often working both "day shifts" and "overnight shifts" multiple times a week.

34.     During overnight shifts, Plaintiff would typically work from approximately 8:00 PM to approximately 10:00 AM. During day shifts, Plaintiff could work anytime from 10:00 AM until 8:00 PM. Plaintiff would often work an overnight shift at the home of one client and then continue to a day shift for another client.

35.     As a HHA for Defendant, Plaintiff performed a variety of job duties, including but not limited to: cooking for clients, assisting clients with feeding, assisting clients with bathing, assisting clients with dressing, assisting clients with other personal care, lifting and lowering clients into and out of their bed, assisting clients with their feeding tubes, administering

6

medicine, ensuring clients take the appropriate dosage of their medications, assisting clients with using the toilet, changing clients' diapers, assisting clients and their families with light housekeeping, providing emotional support to clients, waking clients up in the middle of the night for medication, changing diapers, or use of the toilet, and attending court hearings on behalf of clients or Defendants.

36. As a HHA, Plaintiff was not completely relieved of her job duties during overnight shifts, as Plaintiff was expected to assist Defendants' clients throughout the night and was therefore unable to use her time freely or to sleep more than a couple hours at a time before being interrupted to perform her job duties.

37. While working overnight shifts, Plaintiff would set an alarm in order to wake up every one or two hours after setting her alarm in order to care for Defendants' clients as required by her job duties, including assisting clients to use the restroom or change diapers, assisting clients to change their sleeping positions or make themselves more comfortable, and any other healthcare related duties as needed.

38. Because of Plaintiff's job duties, Plaintiff could not sleep, nor did she sleep, more than three (3) consecutive hours at a time while working overnight shifts for Defendants.

39. During relevant times, Defendants did not pay Plaintiff overtime at a rate of one and one half times her regular rate of pay for all hours worked over forty (40) in a workweek.

40. During relevant times, although Defendants jointly suffered and permitted Plaintiff to work more than forty (40) hours per workweek, Defendants failed to pay Plaintiff overtime at a rate of one and one half times her regular rate of pay for all hours worked over forty (40) in a workweek.

41. During relevant times, Defendants did not pay Plaintiff overtime for working

"sleep time" hours, which Defendants considered to be all hours between 10:00 PM and 6:00 AM; rather, Defendants paid Plaintiff her straight hourly rate for "sleep time" hours, even during weeks in which Plaintiff's hours exceeded forty (40) hours and she should have been entitled to overtime compensation on those hours.

42. During relevant times, and upon information and belief, Defendants required Plaintiff to complete a timesheet of her weekly hours worked to be turned in each week at Defendants' principal place of business. Defendants would then determine if Plaintiff qualified for overtime pay, and if she did, Defendants would deduct any "sleep time" hours worked from the total amount of hours so that Plaintiff would not be paid overtime on these hours.

43. When Plaintiff asked Defendants for an explanation of the policy regarding "sleep time" and the overtime calculation, Plaintiff was informed by Defendants that "sleep time" hours did not count towards the calculation for overtime hours.

44. Additionally, Defendants jointly suffered and permitted Plaintiff to attend at least two mandatory employee meetings, including one on July 7, 2017 and one on July 21, 2017; however, Defendants did not compensate Plaintiff at all for attending these required meetings, which lasted approximately at least two (2) hours.

45. Upon information and belief, Defendants did not keep a complete set of records, including time sheets or other materials recording all of Plaintiff's hours worked, compensation, deductions, or withholdings, for any of Plaintiff's duties performed as a HHA.

46. During relevant times, as part of Plaintiff's job duties, Plaintiff would drive clients to the store, to various social engagements, to the pharmacy, to a doctor's appointment, or other errands.

47. During relevant times, Defendants jointly suffered and permitted Plaintiff to

drive, including driving from one clients' home directly to the home of another client, driving to pick up medication or run other errands for the client, and driving to drop off Plaintiff's timesheets in between clients, without providing reimbursement for Plaintiff's mileage in some instances, and without allowing Plaintiff to count some of drive time as compensable hours worked.

48. Plaintiff was not properly paid for her mileage or reimbursed for the use of her own car when she engaged in the above listed activities during the course of her employment.

49. During relevant times, Defendant Kaleal verbally instructed Plaintiff that she needed to be "on call" to receive phone calls from Defendants' other HHAs asking for guidance, assistance, or instruction on work-related duties.

50. Defendant instructed Plaintiff that Plaintiff's "on call" hours were times in which Plaintiff was not working her regular schedule, yet was told she needed to be available to answer questions and assist other HHAs.

51. Defendant Kaleal first informed Plaintiff that she would be paid at a rate of one (1) dollar per hour while on call, and later informed Plaintiff that she would be paid a flat rate of one (1) dollar per phone call, no matter the length of the phone call.

52. During relevant times, Defendants had knowledge of and acted willfully in regards to their conduct described herein.

53. Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

54. At all times material to this Complaint, Plaintiff was performing work primarily for the benefit of Defendants.

55. During relevant times, Defendants' clients and employees had Plaintiff' cell

9

phone number. Plaintiff Sparks fielded calls during off-hours, an average of ten (10) to thirty (30) times per week, where each call could last ten (10) minutes or less, with some calls lasting longer periods of time.

56. Plaintiff recorded her total time spent fielding calls during her off-hours, and submitted them to her employer.

57. Plaintiff was paid at a rate of one (1) dollar per hour for each call she responded to for the first three months.

58. Later, for a period of a couple weeks, Plaintiff was paid at a flat rate of one (1) dollar per call for each call she responded to during her off-hours.

59. During relevant times, Plaintiff Sparks was not exempt from the overtime provisions of the FLSA and the Ohio Acts.

60. Plaintiff has suffered damages and continues to suffer damages as a result of Defendants' acts or omissions as described herein.

## VII. CLAIMS FOR RELIEF

### COUNT I
**Minimum Wage Violations of the Fair Labor Standards Act ("FLSA")**

61. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

62. The FLSA requires that covered employees be compensated for every hour worked in a workweek. *See* 29 U.S.C. § 206(a)-(b).

63. During all times material to this Complaint, the federal minimum wage has been $7.25 per hour.

64. During all times material to this Complaint, Defendants were employers covered by the FLSA and required to comply with its mandates.

65. During all times material to this Complaint, Plaintiff was a covered employee entitled to protection under the FLSA.

66. During all times material to this Complaint, Plaintiff was not exempt from the minimum wage obligations set forth under the FLSA. *See* 29 U.S.C. § 213.

67. During all times material to this Complaint, Defendants were not approved to pay subminimum wages in violation of the FLSA and 29 C.F.R. Part 525.

68. By not paying at least $7.25 for all hours worked to Plaintiff, Defendants violated the minimum wage provisions of the FLSA. *See* 29 U.S.C. § 206(a)(1)(C).

69. By the acts and conduct described above, Defendants violated and are in violation of the FLSA, and in doing so Defendants acted willfully, without a good faith basis and in reckless disregard of clearly applicable FLSA provisions.

## COUNT II
### Overtime Violations of the Fair Labor Standards Act

70. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

71. The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per week. 29 U.S.C. § 207(a)(1).

72. During all times material to this Complaint, Defendants have been employers covered by the overtime requirements set forth in the FLSA.

73. During all times material to this Complaint, Plaintiff was an "employee" within the meaning of the FLSA.

74. During all times material to this Complaint, Plaintiff was not paid the weekly equivalent of $455.00.

75. During all relevant times, Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not "executive," "computer," "administrative," or "professional" employees, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.0, *et seq*.

76. During all times material to this Complaint, Plaintiff was not exempt under any other exemption.

77. During all times material to this Complaint, Plaintiff regularly worked in excess of forty (40) hours in workweek.

78. Defendants violated the FLSA with respect to Plaintiff by failing to compensate her at time-and-one-half times her regular rate for any hours worked over forty (40) hours in a workweek.

79. During all times material to this Complaint, Defendants knew that Plaintiff was not exempt from the overtime obligations imposed by the FLSA. Defendant has also known that they were required to pay Plaintiff overtime compensation at a rate of one and one-half times her regular rate for hours worked in excess of forty (40) hours per workweek. Despite such knowledge, Defendants willfully withheld and failed to pay the overtime compensation to which Plaintiff is entitled.

80. By the conduct described above, Defendants have violated and are in violation of 29 U.S.C. § 207(a)(1).

81. In violating the FLSA, Defendants acted willfully, without a good faith basis and in reckless disregard of clearly applicable FLSA provisions.

### COUNT III
### Sleep Time Pay Violation of 29 C.F.R. §§785.20-785.22 of the FLSA

82. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

83. During all times material to this Complaint, Defendants have been, individually and jointly, employers subject to the FLSA's recordkeeping requirements.

84. To exclude eight hours or less that an employee spends sleeping from that employee's total of hours worked, an employer must show an expressed or implied agreement that excludes sleep time; adequate sleeping facilities for an uninterrupted night's sleep furnished by the employer; the possibility of at least five (5) hours of consecutive sleep during the scheduled sleeping periods; and any interruptions to perform duties must be considered hours worked. *See e.g.* 29 C.F.R. §§ 785.20-.22.

85. Upon information and belief, Defendants did not keep any documents demonstrating an agreement with the Plaintiff that her sleeping hours would be excluded from her hours worked.

86. Upon information and belief, Defendants did not provide Plaintiff adequate sleeping facilities for an uninterrupted night's sleep.

87. Because Plaintiff would wake up every couple hours to perform her job duties, Plaintiff did not have up to five uninterrupted hours of sleep per night when she worked night shifts for Defendants.

88. Upon information and belief, Defendants excluded Plaintiff's interrupted sleep hours from the total hours worked for which Defendants paid Plaintiff, even though Plaintiff's sleep hours never reached five consecutive and uninterrupted hours.

89. Plaintiff was not paid properly for her hours worked because Defendants improperly excluded her interrupted and non-consecutive sleep hours from her total working hours.

90. Because Defendants did not keep the proper records required to take a sleep time credit, Defendants have not met the prerequisite for excluding Plaintiff's sleep time from Plaintiff's wages.

### COUNT IV
### Minimum Wage Violations of the Ohio Wage Act and the Ohio Constitution

91. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

92. The Ohio Wage Act requires that covered employees be compensated for every hour in a workweek. *See* R.C. §§ 4111 *et seq.; see also* 29 U.S.C. § 206(b).

93. Section 34a of the Ohio Constitution provides that an employer must pay the federal minimum wage rate.

94. During all times material to this complaint, Plaintiff was a covered employee entitled to the Ohio Wage Act's protections.

95. During all times material to this complaint, Plaintiff was jointly employed by Defendants.

96. During all times material to this Complaint, Defendants were entities covered by the Ohio Constitution Art. II, § 34; and Plaintiff was employed by Defendants within the meaning of the Ohio Constitution Art. II, § 34.

97. During all times material to this Complaint, Defendants were covered employers required to comply with the Ohio Wage Act's and the Ohio Constitution's mandates.

98. During all times material to this complaint, Plaintiff was not exempt from receiving the Ohio minimum wage because, *inter alia*, she was not an "executive," "administrative," "professional," "outside sales" or "computer" employee, as those terms are defined under the FLSA. *See* R.C. § 4111.03(A); *see also* 29 C.F.R. §§ 541.0, *et seq.*

99. Defendants failed to pay Plaintiff at least the Ohio minimum wage per hour for all hours worked in a workweek during the period relevant to this Complaint.[1]

100. Because Defendants violated the Ohio Wage Act's and the Ohio Constitution's minimum wage requirements, a three (3) year statute of limitations applies to such violation, pursuant to R.C. §4111.14(K).

101. As a result of the foregoing, Plaintiff was illegally denied the Ohio minimum wage, in such amounts to be determined at trial, and is entitled to recovery of total unpaid amounts, plus and additional two-times the unpaid wages, costs, reasonable attorney's fees and other compensation pursuant to R.C. §4111.14(J).

## COUNT V
### Overtime Violations of the Ohio Wage Act

102. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

103. During all times material to this Complaint, Plaintiff was jointly employed by Defendants.

104. During all times material to this Complaint, Defendants have been employers covered by the overtime requirements set forth in the Ohio Wage Act.

105. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" (1.5) the employee's regular rate of pay for all hours worked

---

[1] The applicable hourly minimum wages in Ohio are: $7.95 (2014); $8.10 (2015); $8.10 (2016); and $8.15 (2017).

15

over forty (40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

106. During all times material to this complaint, Plaintiff was a covered employee entitled to the Ohio Wage Act's protection.

107. As an employee for Defendants, Plaintiff worked in excess of the maximum weekly hours permitted under R.C. §4111.03, but was not paid overtime wages for this time spent working.

108. Defendants failed to pay Plaintiff overtime compensation at time and a half (1.5) of her regular rate of pay for hours in a work week in excess of forty (40).

109. The exact total amount of compensation, including minimum wage and overtime compensation that Defendants have failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants, or were not kept by Defendants.

110. The Ohio Revised Code requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff is entitled to review the relevant records of hours worked to determine the exact amount of overtime wages owed by Defendants. Absent Defendants' keeping these records as required by law, Plaintiff is entitled to submit her information about the number of hours worked.

111. In violating the Ohio Wage Act, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio Wage Act provisions.

**COUNT VI**
**Violation of the Ohio Prompt Pay Act, R.C. § 4113.15 ("OPPA")**

112. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

113. During all times material to this Complaint, Plaintiff was jointly employed by Defendants.

114. During all times material to this Complaint, Defendants were entities covered by the OPPA; and Plaintiff was employed by Defendants within the meaning of the OPPA.

115. The OPPA requires that the Defendants pay Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by her during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by her during the last half of the preceding calendar month. *See* R.C. § 4113.15(A).

116. During all times material to this complaint, Plaintiff was not paid wages, either her regular rate, a minimum wage or overtime wages at one and one-half times her regular rate within thirty (30) days of performing the work. *See* R.C. §4113.15(B).

117. Plaintiff's unpaid wages remained unpaid for more than thirty (30) days beyond her regularly scheduled payday.

118. In violating the OPPA, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## **PRAYER FOR RELIEF**

A. A declaratory judgment that Defendants' wage and hour policy and practice alleged herein, jointly and severally, violates the FLSA, the Ohio Wage Acts and the Ohio Constitution;

B. Issuing an injunction prohibiting Defendants from engaging in future violations of the

FLSA, the Ohio Wage Acts, and the Ohio Constitution;

C. Judgment against Defendants for damages for all unpaid minimum wage and overtime compensation owed to Plaintiff during the applicable statutory period under the FLSA, the Ohio Wage Act and the OPPA;

D. Judgment against Defendants for liquidated damages pursuant to the FLSA 29 U.S.C. § 201, *et seq.,* and attendant regulations at 29 C.F.R. § 516 *et seq.*, in an amount equal to all unpaid minimum wage and overtime compensation owed to Plaintiff during the applicable statutory period;

E. Judgment against Defendants for all unpaid minimum wage and overtime compensation and any liquidated damages allowed by Ohio law for Plaintiff, including but not limited to liquidated damages provided R.C. §4111.14(J);

F. An order directing Defendants to pay Plaintiff reasonable attorneys' fees and all costs connected with this action;

G. Rendering a judgment against Defendants for all damage, relief, or any other recovery that this Court may deem necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all questions of fact raised by the Complaint.

Date: August 2, 2017

Respectfully submitted,

*/s/Robert E. DeRose*_____
Robert E. DeRose (OH Bar No. 0055214)
Molly K. Tefend (OH Bar No. 0093574)
**BARKAN MEIZLISH HANDELMAN
GOODIN DEROSE WENTZ, LLP**

                250 E. Broad St., 10th Floor
                Columbus, Ohio 43215
                Telephone: (614) 221-4221
                Fax: (614) 744-2300
                Email: bderose@barkanmeizlish.com
                   mtefend@barkanmeizlish.com

*Counsel for Plaintiff*